IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WINGS PLATINUM, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:23-CV-2145-D |
| | § | |
| WESTCHESTER SURPLUS LINES | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

This is a removed action by plaintiff Wings Platinum LLC ("Wings"), an insured, against its insurer, defendant Westchester Surplus Lines Insurance Company ("Westchester"), arising from the denial of Wings's claim for coverage following a wind and hail storm. Wings asserts claims for breach of contract; unfair settlement practices, in violation of Tex. Ins. Code Ann. §§ 541.060(a)(1), 541.060(a)(2)(A), 541.060(a)(3), 541.060(a)(4), and 541.060(a)(7) (West 2023); violations of the Texas Prompt Payment of Claims Act, Tex. Ins. Code Ann. § 542.051 *et seq.* (West 2023); and breach of the duty of good faith and fair dealing. Wings moves to strike the testimony and opinions of Westchester's expert Robert J. Herrera ("Herrera"). For the reasons that follow, the court denies the motion.

I

Westchester insured Wings's commercial property located at 3950 Platinum Way in Dallas ("the Property") under an insurance policy (the "Policy") with effective dates of June

1, 2020 to June 1, 2021. Wings alleges that, on April 9, 2021, a severe wind and hail storm caused significant damage to the Property's roof and exterior. Wings submitted a claim under the Policy for wind and hail damage to the Property that it maintained was caused by the storm, seeking the cost to repair the roof. Westchester retained Herrera, an engineer at Stephens Engineering ("Stephens"), to investigate Wings's claim. Herrera first inspected the property on September 9, 2021, and he authored three reports. The first report, dated September 30, 2021 (the "First Report"), concluded that identified fractures in the thermoplastic membrane of the roof were not caused by wind or hail. The second report, a supplement produced after a follow-up investigation of the building on February 28, 2022 and dated March 22, 2022 (the "Second Report"), identified fractures in the membrane consistent with impact, but it maintained that those fractures were not caused by a weather event in 2021 and were instead caused by a storm in April 2017. The third report, a second supplement dated June 23, 2022 (the "Third Report"), responded to additional materials that Wings had provided and maintained the conclusions reached in the Second Report. After Westchester denied Wings's claim on or about April 21, 2022, Wings sued Westchester in state court, and Westchester removed the lawsuit to this court. Wings now moves to strike Herrera's testimony and opinions.[1] The court is deciding the motion on the briefs, without oral argument.

---

[1] Westchester has filed a motion for partial summary judgment, which the court is deciding by separate memorandum opinion and order filed contemporaneously with this decision.

II

"The court decides [this] motion[] in its role as gatekeeper under Fed. R. Evid. 702." *SEC v. Cuban*, 2013 WL 3809654, at *1 (N.D. Tex. July 23, 2013) (Fitzwater, C.J.) (citing *Nunn v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2540754, at *2 (N.D. Tex. June 22, 2010) (Fitzwater, C.J.)). "The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Nunn*, 2010 WL 2540754, at *2 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

The first requirement is that the expert be qualified. "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id.* (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (citation omitted).

The second requirement is that the expert's testimony be relevant. To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993)). "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593); *see also* Rule 702(d) (requiring that the expert has reliably applied the principles and methods to the facts of the case).

The third requirement is that the expert's testimony be reliable. "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93); *see also* Rule 702(c) (requiring that "testimony [be] the product of reliable principles and methods"). Expert testimony "must constitute 'more than subjective belief or unsupported speculation.'" *Nunn*, 2010 WL 2540754, at *2 (quoting *Daubert*, 509 U.S. at 590). The court focuses on the expert's methodology, not the conclusions generated by it. *Id.* at *4 (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997)). If, however, "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," the court may exclude the testimony as unreliable. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Johnson v. Arkema, Inc.*, 685 F.3d 452, 460-61 (5th Cir. 2012); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278-79 (5th Cir. 1998). This review is usually conducted by considering the five nonexclusive *Daubert* factors. But these factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kumho*, 526 U.S. at 150.

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10; *see also Johnson*, 685 F.3d at 459. The court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (per curiam) (citation omitted). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *Nunn*, 2010 WL 2540754, at *5.

III

Wings seeks to exclude Herrera's testimony and opinions on the basis that he is not qualified to opine as an expert on the age of the damage to the roof and that his opinions regarding the age of the hail damage on the roof are not reliable because they lack any reasonable basis and are not the result of sound scientific principles and methods.

A

Wings posits that Herrera has insufficient training to be qualified as an expert for purposes of determining the time when the roof was damaged by hail. It contends that Herrera's prior engineering experience is not relevant to the issue on which he opines—the age of the hail strike damage—and that Herrera's mere one year and one month of experience

at the time of his First Report is insufficient to qualify him as an expert.

Neither Westchester nor Herrera articulates how Herrera's specific experience designing commercial and residential structures as a project engineer qualifies him to opine on the age of the hail damage. Herrera's training and experience at Stephens, however, qualify him to offer these opinions as an expert. "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Van Winkle v. Rogers*, 82 F.4th 370, 379 (5th Cir. 2023) (quoting *Huss*, 571 F.3d at 452). In his affidavit, Herrera avers that he received on-the-job training when he began working at Stephens in 2020 that was "specific to identifying and assessing wind- and hail-related damage to roofs, including the type of roof at issue in this lawsuit." D. App. (ECF No. 30-2) at 114. He shadowed senior engineers for 3 to 4 months before beginning to inspect buildings independently, and, at the time he inspected the roof at 3950 Platinum Way, he had inspected approximately 200 buildings for storm damage.[2] At the time of his affidavit, he had inspected approximately 750 properties for storm damage. The court finds this experience and training sufficient to qualify Herrera to offer his expert opinion on the age and cause of the damage to the roof at 3950 Platinum Way under Rule 702. Wings can

---

[2]To suggest that Herrera is not qualified to opine on the age of the impact in this case, Wings points to his failure to specify how many of these 200 buildings had thermoplastic membrane roofs like the one at issue in this case and whether any of them involved hail or determining the age of an impact. This goes to the weight, rather than the admissibility, of Herrera's pertinent opinions.

challenge Herrera's opinions by such means as vigorous cross-examination and the presentation of contrary evidence.

B

Wings also contends that Herrera's opinions regarding the age of the hail strikes are not reliable because they are entirely subjective and lack "any sort of basis, rubric, metric, or standard" by which to judge them, and because Herrera could not explain how his determination of the age of the damage could be duplicated or tested. P. Br. (ECF No. 26) at 15. Westchester maintains that Herrera reached his opinion that the identified hail damage was caused by a historical, as opposed to recent, weather event based on his "inspection of the entire roof, review of historical information about the property, weather data, and materials provided by [Wings]." D. Resp. (ECF No. 29) at 15.

Rule 702 does not prohibit an expert from reaching an opinion that is based on the expert's experience. *Kumho Tire*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); *Kozak v. Medtronic, Inc.*, 512 F.Supp.2d 913, 918 (S.D. Tex. 2007) ("An expert's testimony does not always have to be based on scientific testing; it can be based on personal experience."); *see also* Rule 702 advisory committee notes (2000 Amendments) ("Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony.").

Herrera testified in his deposition that he was able to examine fractures in the roof and

determine, "to a reasonable degree of engineering certainty," that the fractures were more than one year old and thus were not due to a recent hail event. P. App. (ECF No. 27) at 16. This observation and judgment, in connection with his review of weather research and Roof Technical Services, Inc.'s ("RTS's") report from its analysis of the roof samples, formed the basis for Herrera's opinion that the damage to the roof was not caused by a hail event in April 2020. D. App. (ECF No. 30) at 160-61. The Second Report explained that the fractures on the roof attributed to hail damage were consistent with hailfall on or about April 25, 2017 because the damage was consistent with hail larger than that reported at the property in the April 2021 storm. *Id.* The court is satisfied with Westchester's showing of reliability in this instance. *See, e.g.*, *Kim v. Nationwide Mut. Ins. Co.*, 614 F.Supp.3d 475, 488 (N.D. Tex. 2022) (Fitzwater, J.) ("[The expert] inspected the Property; observed the markings himself on the Property; was able to distinguish the hail from other potential sources of damages; and reviewed a weather report to determine whether a hail storm could have damaged the roof."); *Kahlig Auto Grp. v. Affiliated FM Ins. Co.*, 2021 WL 148056, at *4 (W.D. Tex. Jan. 15, 2021) (finding expert testimony reliable when the expert "reviewed an analysis of published weather data from the date of the storm; physically inspected the three dealerships; interviewed employees with personal knowledge of the storm and damage; [and] reviewed photographs of vehicles located at the three dealerships damaged by hail during the storm[.]"); *TBC-JP-LR, JV v. Allied Prop. & Cas. Ins. Co.*, 2018 WL 10562785, at *4 (N.D. Tex. Sept. 28, 2018) (Means, J.) (finding an expert's opinions about the age and cause of storm damage reliable when based on a review of storm events, damage, and

experience working in the area and noting that the expert "need not eliminate all possible causes of the damage at issue, however, for his opinion to be sufficiently reliable to be presented to the jury"). Wings's concerns regarding Herrera's opinions go to the weight of his testimony, not its admissibility, and will be better addressed through vigorous cross-examination and the presentation of contrary evidence. *See Daubert*, 509 U.S. at 596.

\* \* \*

For the reasons explained, the court denies Wings's motion to strike the testimony and opinions of Westchester's expert Robert J. Herrera.

**SO ORDERED**.

February 4, 2025.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE